IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ROBERT L. ROSE,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>STATE OF MONTANA, THE MONTANA DEPARTMENT OF CORRECTIONS(MDOC)), CLINICAL SERVICES DIVISION, CONNIE WINNER; TRISDEN KOHUT, DR. REESE, WARDEN LYNN GUYER, WARDEN KIRKEGARD, DOC DIRECTOR REGINALD MICHAEL, MDOC MEDICAL DIRECTOR LIZ RANTZ, MEMBERS OF MDOC MEDICAL REVIEW PANEL(DO'S), AND MOUNTAIN PACIFIC QUALITY HEALTH), FOUNDATION (MPQH),<br><br>　　　　Defendants. | CV 20-00058-H-BMM-KLD<br><br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

　　Pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (Doc. 29.) Rose has been granted multiple extensions of time to respond and has now done so. (Doc. 43.) For the reasons explained herein, the motion should be granted in part. Rose should be given one opportunity to amend Claim 1.

1

**I.     Background**

Because the procedural background and status of Rose's treatment is relative to the resolution of the pending motion to dismiss, it will be set forth briefly herein.

Plaintiff Robert Rose, a pro se prisoner at Montana State Prison, has been diagnosed with Hepatitis C Virus (HCV). He filed an initial Complaint asserting Eighth Amendment violations under 42 U.S.C. § 1983; violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, et seq.; violations of the Rehabilitation Act (RA), 29 U.S.C. §§ 791-94a; and, state tort claims. See generally, (Doc. 2.) Specifically, Rose alleged: (1) Defendants had been deliberately indifferent to his serious medical needs by not providing direct acting anti-viral (DAA) medications to treat his HCV, *id*. at 24-25; (2) Defendants violated the ADA by not providing DAA medication to treat his HCV, *id*. at 25-27; (3) Defendants violated the RA by not providing DAA to treat his HCV, *id*. at 27-28; (4) pendant state law tort claims for public and private nuisance, *id*. at 28-29; and, (5) Defendants' response to the COVID-19 pandemic had been deliberately indifferent and created a substantial risk of harm to Rose in violation of the Eighth Amendment. *Id*. at 23; see also, (Doc. 2-2 at 18.)

Rose then filed two motions, (Docs. 5, 6), which the Court construed as motions for leave to amend. While Rose made reference in his initial complaint to the COVID-19 pandemic and its possible effect on him, given that he was

considered to be an individual at a higher risk for severe illness and/or complications from COVID-19, Rose's supplemental pleadings provided additional facts regarding the COVID-19 situation at MSP. See, (Doc. 5). Rose also sought injunctive relief in relation to the COVID-19 situation. See, (Doc. 6 at 6.) Rose was granted leave to amend and the supplemental documents were filed. See generally, (Doc. 9.)

The Court observed, however, that Rose had exceeded the three "strikes" allowed under the Prison Litigation Reform Act because he had previously filed three federal cases that had been dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted.[1] Given the nature of Rose's claims and out of an abundance of caution, the Court assumed that Rose qualified for the "imminent danger of serious physical injury" exception of Section 1915(g). *Id.* The Defendants were served with Rose's complaint and amended claims.

Rose then filed a motion for preliminary injunction and brief in support. (Docs. 15 & 16.) Rose sought injunctive relief relating not only to the COVID-19 conditions at MSP, but also for MSP's purported denial of HCV treatment. The Defendants responded by asserting Rose failed to meet the requisite showing and

---

[1] See (Doc. 9 at 2)(citing *Rose v. State of Montana et al.*, 09-cv-00043-H-DWM-RKS; *Rose v. Montana Department of Corrections, et al.*, 10-cv-00002-H-DWM; and *Rose v. Swanson, et al.*, 10-cv-00048-H-DWM.)

was not entitled to injunctive relief. Further, Defendants advised that Rose had tested positive for COVID-19 on October 20, 2020. He had been isolated and monitored and, as of October 31, 2020, Rose's case was considered resolved and he was cleared to return to work. (Doc. 24 at 12-13, ¶ 31). Defendants also advised that Rose was currently awaiting review by the Medical Review Panel for a determination regarding his recommended HCV treatment. *Id*. at 19, ¶ 77.

On December 14, 2020, the Court denied Rose's request for a preliminary injunction. (Doc. 25.) Rose appealed the denial of injunctive relief. See, (Doc. 27.) Rose subsequently sought voluntary dismissal of his appeal. (Doc. 30.) As a basis for his voluntary dismissal, Rose explained that he reasonably expected to begin his HCV treatment. See, (Doc. 35-1 at 1.)

In the interim, Defendants filed a Motion to Dismiss for Failure to State a Claim and brief in support. (Docs. 29 & 30.) Rose then filed a motion for extension of time to respond to Defendant's motion to dismiss, (Doc. 34), as well as a renewed motion for preliminary injunction. (Doc. 35.)

In his renewed request for injunctive relief, Rose explained that in the beginning of January 2021, the CSD Medical Review Panel had approved his HCV treatment. *Id*. at 2. Rose further noted that because he believed treatment to be forthcoming, he voluntarily dismissed his Ninth Circuit appeal challenging the denial of injunctive relief. *Id*. at 3. In his renewed request, Rose explained that

although the CSD had recommended his HCV treatment, Mountain Pacific Quality Health ("MPQH") had not yet approved such treatment. Rose sought this Court's intervention in ordering the recommended treatment to begin. *Id*. at 6. The Defendants subsequently advised the Court that Rose was receiving the treatment that was the subject of the renewed request for preliminary injunction. (Doc. 37 at 2.) Rose then sought to withdraw his second request for injunctive relief; Rose's request was granted. (Docs. 40 &41.) Rose was provided an extension of time within which to respond to Defendants' motion to dismiss. *Id*. On April 1, 2021, Rose filed his response to the Motion to Dismiss; two weeks later the Defendants filed their reply. (Doc. 43 & 44.) In the interim, this case was reassigned to the undersigned. (Doc. 42.)

Thus, in the time that Rose has filed this lawsuit, he has been diagnosed with and recovered from COVID-19. Additionally, he is currently receiving treatment for HCV.

  **II.**  **Motion to Dismiss**

A motion to dismiss brought under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F. 3d 1240, 1241-42 (9th Cir. 2011)(citations omitted). A court's review is generally limited to the operative pleading. *Daniels-*

*Hall v. National Educ. Ass'n*, 629 F. 3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F. 3d 903, 910 (9th Cir. 2007). A pleading is sufficient, in accordance with Rule 8(a)(2), if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the …claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555.) "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

To decide a motion to dismiss, the court must accept all factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-4 (2007); *Hosp. Bldg. Co. v. Rex Hosp. Trustees*, 425 U.S. 738, 740 (1976). The court must construe the alleged facts in the light most favorable to the plaintiff. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir. 1994)(per curiam). All ambiguities or doubts must be resolved in the plaintiff's favor. See, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F. 3d 1116, 1121 (9th Cir. 2008)(citations omitted); see also, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)("Rules 12)B)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

**Claim 1:    Deliberate indifference for failure provide direct acting anti-viral (DAA) medications to treat HCV**

"[T]o maintain an Eighth Amendment claim based upon prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F. 3d 1091, 1096 (9th Cir. 2006)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. When a prisoner alleges a delay in receiving medical treatment, the delay must have led to

7

further harm for the prisoner to make a claim of deliberate indifference to serious medical needs. See, *McGukin v. Smith*, 974 F. 2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F. 3d 1133, 1136 (9th Cir. 1997) (citing *Shapely v. Nevada Bd. Of State Prison Comm'rs*, 766 F. 2d 404, 407 (9th Cir. 1985). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F. 3d 1051, 1060 (9th Cir. 2004).

Defendants argue Rose has not properly pled a § 1983 Eighth Amendment claim. Specifically, Defendants assert Rose cannot sue non-persons, which would include: the State of Montana, the Montana Department of Corrections, the Clinical Services Division, and the Montana Department of Corrections Medical Review Panel. See, (Doc. 30 at 6); (Doc. 44 at 2-3.) Additionally, Defendants argue Rose has not properly pled that any named defendant personally participated in the constitutional violation. (Doc. 30 at 6-7); see also, (Doc. 44 at 3.) As to Dr. Rees and Dr. Kohut, Rose asserts that they informed him he could not receive treatment and denied the same, but Rose does not allege any facts in relation to what Kirkegard, Michael, Rantz, Guyer, or Winner did to violate the Eighth Amendment. (Doc. 44 at 3); see also, (Doc. 30 at 7.)

Rose concedes that there are deficiencies in his complaint, including a need to provide a more detailed description of what each defendant did or failed to do and how such action or inaction led to a constitutional violation and injury. (Doc.

8

43 at 5.) But Rose asserts he should be provided an opportunity to cure such deficiencies. *Id.* Further, Rose believes his referral to Defendants collectively in describing the injuries that flowed from their purported actions was adequate to put the Defendants on notice of his claims. *Id.* at 6.

### i. Entity Defendants

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI; *see also Edelman v. Jordan*, 415 U.S. 651, 664 (1974). The United States Supreme Court has interpreted this amendment to mean that absent waiver, neither a State nor an agency of the State acting under its control may "be subject to suit in federal court." *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The State of Montana has waived immunity only for tort claims brought in state court. Mont. Code Ann. § 2-9-101 et seq. Hence Mr. Rose's claims brought under 42 U.S.C. § 1983 against the State of Montana cannot be brought in federal court.

The Eleventh Amendment also bars suits against state agencies. *See Natural Resources Defense Council v. California Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996); *Brooks v. Sulphur Springs Valley Elec. Co.*, 951 F.2d 1050, 1053 (9th

Cir. 1991); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity); *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1989). "Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states." *Brooks*, 951 F.2d at 1053 (citations omitted). "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief is legal or equitable in nature." *Id.* (citation omitted).

Because the Montana Department of Corrections is a state agency and the Clinical Services Division is a part of the MDOC, the State and these entities are immune to monetary damages for Mr. Rose's claims under the Eleventh Amendment. Thus, the State of Montana, the Montana Department of Corrections, the Clinical Services Division, and the Montana Department of Corrections Medical Review Panel should be dismissed.

### ii. Individual Defendants

To the extent Rose is suing individuals in their official capacities, the Eleventh Amendment also bars suits for money damages in federal court against state officials in their official capacity. *Aholelei v. Department of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). However, it does not bar official capacity

suit for prospective relief, *Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010); nor does it bar suit for damages against state officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits...seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25; *Suever v. Connell*, 579 F.3d 1047, 1060-61 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit. *Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994); *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1991).

A claim for prospective injunctive relief against a state official in his official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 92 (1989); *accord Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity).

The Court agrees with Defendants' argument that as to Drs. Rees and Kohut, Rose has not adequately pled a § 1983 claim for deliberate indifference. He has alleged that they denied him HCV treatment, but mere denial alone is insufficient

11

to state a claim for deliberate indifference. "An inmate challenging a denial of treatment must [show] that the denial 'was medically unacceptable under the circumstances,' and made 'in conscious disregard of an excessive risk to [the inmate]'s health. *Rosati v. Igbinoso*, 791 F. 3d 1037, 1039 (9th Cir. 2015) (quotations omitted). At this juncture, Rose has alleged no facts which would tend to support such a showing.

Likewise, Rose has not alleged any acts undertaken by the remaining individually-named defendants which would tend to support a purported Eighth Amendment violation based upon their personal participation. Moreover, his suggestion that they acted "collectively," without any additional support, is insufficient to support his claim of deliberate indifference.

Additionally, as set forth above, Rose is now receiving treatment for HCV, but he has not moved to dismiss this claim, nor has he conceded it is moot. Thus, it is unclear at this juncture the exact nature of Mr. Rose's claim for prospective injunctive relief against the named individuals in their official capacities. While the Court is skeptical of Mr. Rose's ability to assert a plausible claim against any of the remaining named defendants, either in their individual or official capacities, given what has transpired in recent months in relation to Rose's HCV treatment, he should be given an opportunity to amend his complaint relative to this claim.

**Claims 2 & 3:  Violations of the ADA and RA by failing to provide DAA medication to treat HCV**

Defendants next assert that Rose's ADA and RA claims should both be denied because Rose alleges inadequate treatment for HCV, not discrimination based upon his HCV diagnosis. (Doc. 30 at 8-9.) Defendants believe Rose has not plead any plausible facts supporting discrimination, rather he concedes that his claims are based upon a purported delay in diagnosis and delay in treatment and not discrimination. *Id*.; see also, (Doc. 44 at 4-5.)

Rose asserts he can cure his deficiencies relative to these two claims by expressly alleging he was denied treatment because he is diagnosed with HCV and not another chronic illness, such as HIV. *Id*. at 7. Because of his positive HCV status, Rose believes his diagnosis and treatment have been delayed and denied. *Id*. at 7-8.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state an ADA claim, a plaintiff must demonstrate that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;

13

and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (*quoting McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)).

"The ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities." *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004) (*quoting Galvin v. Cook*, 2000 WL 1520231, at *6 (D. Or. 2000)). Claims based only on the provision of inadequate or negligent medical care are not cognizable under the ADA. *See Simmons*, 609 F.3d at 1022 ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006) ("When the decision being challenged is 'simply a reasoned medical judgment with which the patient disagreed,' it is more appropriate for the patient to turn to 'state medical malpractice law, not [the ADA].'" (*quoting Lesley v. Chie*, 250 F.3d 47, 58 (1st Cir. 2001))); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of disabled patients.... The ADA does not create a remedy for medical malpractice.").

Rose cannot convert this claim into one that is cognizable under the ADA

and/or the RA, by attempting to assert discrimination based upon his HCV status. His underlying claim is based upon a denial of care. Because Mr. Rose's claims arise from an alleged denial of medical treatment, his ADA and RA claims should be dismissed.

**Claim 4: Pendant state law tort claims for public and private nuisance**

In relation to Rose's state law nuisance claim, Defendants argue this court should decline to exercise supplemental jurisdiction because the claim is factually distinct from Rose's federal claims, the claim is already pending in state court, and the claim is subject to sovereign immunity. See, (Doc. 30 at 9-12.) Defendants argue that Rose's federal claims deal with HCV and COVID-19, while his state tort nuisance claim is directed at prison infrastructure and Montana Public Safety Regulations, specifically building and plumbing codes and alleged overcrowding at MSP. See, (Doc. 44 at 5.) Defendants assert Rose is attempting to shoehorn this distinct state claim into the pending lawsuit. *Id*. Defendants also advise the Court that in their Answer, they intend to assert sovereign immunity over the state law nuisance claim, which weighs against this court exercising supplemental jurisdiction. See, (Doc. 44 at 6, f.n. 3.)

Relative to his state nuisance claim, Rose believes he can show that the overcrowding at MSP is a causal element of his exposure to HCV and also constitutes cruel and unusual punishment. *Id*. at 8. Rose believes this issue is

intertwined with his risk of exposure to communicable diseases, including HCV. *Id*. In relation to the supplemental jurisdiction issue, Rose explains he is seeking injunctive relief in the state court, not damages. *Id*. Further, Rose believes he should have the opportunity to seek dismissal of his state court action. *Id*. at 8-9. Rose believes he should be allowed an opportunity to amend these claims and that this Court should consider his state court documents. *Id*. at 9.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the actions within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F. 3d 969, 978 (9th Cir. 2004). Section 1367(a) requires courts to exercise supplemental jurisdiction, while § 1367(c) provides "the exclusive means by which supplemental jurisdiction can be declined by a court." *Executive Software N. Am., Inc. v. U.S. Dist. Court for the Cent. Dist. Of Cal*., 24 F. 3d 1545, 1556 (9th Cir. 1994). Under Section 1367(c), courts may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the

16

district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367 (c ). Courts have "discretion to keep, or decline to keep, [supplemental state law claims] under the conditions set out in § 1367 (c ). *Acri v. Varian Assocs.*, 114 F. 3d 999, 1000 (9th Cir. 1997)(en banc).

In the instant matter, most of Rose's claims fail as a matter of law and are being recommended for dismissal. Further, despite Rose's best efforts to meld the claims, his state law claim dealing with state law safety and building regulations, is factually distinct from his denial of medical care claims. Put another way, the claims do not share a "common nucleus of operative fact." Additionally, Rose's state claim is currently pending in the Montana courts and the claim is subject to sovereign immunity. For all of these reasons, the Court should decline to exercise its supplemental jurisdiction and dismiss this claim pursuant to 28 U.S.C. § 1367 (c)(4).

**Claim 5: Deliberate indifference in response to the COVID-19 pandemic**

Defendants argue this claim should be dismissed because Rose does not seek damages under § 1983 for his COVID-19 related relief and has failed to state a claim for relief against any named defendant. (Doc. 30 at 12-13). Mr. Rose failed to respond to the Defendant's motion to dismiss this claim; Defendants argue this failure constitutes a concession. (Doc. 44 at 7.) The Court agrees, Mr. Rose's

17

silence constitutes acquiescence; the claim should be dismissed.

### III. Conclusion

With the exception of a portion of Claim 1, all of the remaining claims contained in Mr. Rose's Complaint should be dismissed and Defendants' Motion to Dismiss should be granted in part. Rose should be given leave to amend Claim 1, but only as it pertains to the individually-named defendants.

Based on the foregoing, the Court enters the following:

### RECOMMENDATIONS

1. Defendants' Motion to Dismiss (Doc. 29) should be GRANTED in part.

2. Claims 2, 3, and 5 should be DISMISSED with prejudice.

3. The Court should decline to enter supplemental jurisdiction over Claim 4, Rose's pendant state-law claim, thereby dismissing it without prejudice.

4. The State of Montana, the Montana Department of Corrections, the Clinical Services Division, and the Montana Department of Corrections Medical Review Panel should be dismissed.

5. Rose should be granted leave to amend Claim 1.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen days after service. 28 U.S.C. § 636. Failure to timely file written

objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P.  4(a), should not be filed until entry of the District Court's final judgment.

DATED this 9th day of August, 2021.

/s/ *Kathleen L. DeSoto*
Kathleen L. DeSoto
United States Magistrate Judge