IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ROBERT L. ROSE,<br><br>  Plaintiff,<br><br>vs.<br><br>CONNIE WINNER, et al.,<br><br>  Defendants. | CV 20–58–H–BMM<br><br><br>**ORDER** |

Plaintiff Robert Rose ("Rose") is an inmate at Montana State Prison ("MSP") who has been diagnosed with and successfully treated for the Hepatitis C Virus ("HCV"). The Court previously entered an order dismissing most of Rose's claims. The Court permitted Rose, however, to amend his Eighth Amendment claim relating to his HCV treatment. (Doc. 59.) Rose filed an Amended Complaint that focused on the delay of his HCV treatment. (Doc. 64.)

Defendants moved to dismiss Rose's Amended Complain on the basis that Rose had failed to cure the deficiencies contained within his original pleading. (Doc. 69.) The Court determined that Rose had stated a plausible Eighth Amendment claim for his purported delay of treatment. Of particular note, the Court observed Rose's assertion that the application of MSP's HCV policy resulted in delayed

1

treatment and caused him permanent liver damage, along with other health complications. (Doc. 78 at 10), *citing* Amd. Comp. (Doc. 64 at 11, 21, 27.) Rose specifically claimed: "Post-treatment liver panel blood screening, however, shows impaired liver function indicating permanent damage to Plaintiff's liver. Plaintiff continues to suffer from anxiety, concern, and emotional distress over the uncertainty of living with permanent liver scarring and disfunction." (*See* Doc. 64 at 27, ¶¶ 104-05.) Accepting Rose's allegations as true, the Court determined that Rose stated a plausible Eighth Amendment delay in treatment claim. (Doc. 78 at 10.)

The Court ordered the Defendants to respond to the Amended Complaint. (*Id.* at 15-16.) Defendants now seek summary judgment on the ground that no constitutional violation occurred and, even if it had, they are entitled to qualified immunity. (Doc. 81.) The Court will grant Defendants' motion.

**I.    Background**

The nature of HCV and the Montana Department of Corrections HCV policy, as applied to Rose at MSP, have been set forth in detail in prior orders of the Court. (*See e.g.,* Doc. 78 at 2-5.) For purposes of the Court's present analysis, it is undisputed that Rose suffered from a chronic HCV infection. *See* Aff. of Rees (Doc. 82-1 at 1-2.) On December 29, 2020, Dr. Rees submitted an HCV Treatment Pre-Authorization form to the Medical Review Panel, pursuant to policy, on Rose's

behalf. (Doc. 82-2.) Following review by the panel, Rose was recommended for an 8-week course of treatment with Mavyret, a Direct Acting Antiviral ("DAA"). (Doc. 82-3); (Doc. 82-1 at 3, ¶ 17.) Rose received the recommended course of treatment in early 2021. In June of 2021, a Real-Time PCR test confirmed that Rose had cleared HCV as the virus was not detected in his bloodstream. (Doc. 82-4.)

Lab testing administered to Rose in September of 2021 confirmed that Rose remained clear of HCV. (Doc. 82-6 at 2.) In his affidavit, Dr. Rees explained that these same lab results indicated that Rose's Alanine transaminase (ALT), Aspartate Transaminase (AST), Albumin, total protein, and Alkaline Phosphatase (ALP), levels all fell within normal levels. Levels outside of the normal range can indicate liver injury or disease. (Doc. 82-1 at 3-4, ¶¶ 21-22.)

Similarly, lab results from June of 2022, confirmed normal liver functioning and that Rose's Alanine transaminase (ALT), Aspartate Transaminase (AST), Albumin, total protein, and Alkaline Phosphatase (ALP), levels remained within normal levels. (*Id*. at 4, ¶ 23.); *see also* (Doc. 82-7.) Also, Rose's aspartate aminotransferase to platelet ration index (APRI) was 0.175, which provided a negative predictive value of liver cirrhosis. (Doc. 82-1 at 4, ¶ 24.) The same labs also indicated a C-Reactive Protein of less-than 3 mg/L, within the reference interval of 0-10 mg/L. (*Id*. at 4, ¶ 25.) The liver produces the C-Reactive Protein in response to serious health conditions that cause inflammation. Rose's normal level of C-

Reactive Protein indicated no inflammatory processes were present. (*Id*. at 4, ¶¶ 25-26.)

Rose received an Alpha Fetoprotein (AFP) Tumor Marker Test in September of 2022. (Doc. 82-8.) High levels of AFP can indicate liver cancer. Rose's AFP result of 3.1 ng/ML fell within the normal range of 0.0-8.4 ng/ML. (Doc. 82-1 at 4, ¶ 28.) Thus, these lab results, following Rose's HCV treatment, do not show any evidence of liver damage or dysfunction or indicate harm or injury from his prior HCV infection. (Doc. 82-1 at 5, ¶¶ 29-30.) Recent lab results from March of 2023 were in line with prior results confirming normal liver functioning: Rose's Alanine transaminase (ALT), Aspartate Transaminase (AST), Albumin, total protein, and Alkaline Phosphatase (ALP), levels all remained within normal levels. (Doc. 100-2.)

**II.     Legal Standards**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable

inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims).

## III. Discussion

Defendants present the following arguments in support of their motion for summary judgment: (1) Rose has no evidence to establish a genuine issue of fact that any alleged delay caused substantial harm or injury; (2) Rose cannot establish that his successful treatment for HCV constituted cruel and unusual punishment; and (3) Defendants are entitled to qualified immunity, as no clearly established law indicates that Rose's successful treatment violated the Eighth Amendment. (*See* Doc. 81.) Rose opposed the motion and Defendants replied. (Docs. 95, 98, 101.)

### Eighth Amendment Violation

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eight Amendment violation cognizable under § 1983." *Colwell v. Bannister*, 753 F.

3d 1060, 1066 (9th Cir. 2014)(citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)). The deliberate-indifference analysis contains two prongs: an objective prong and a subjective prong.  First, a prisoner must show a "serious medical need."  *Jett v. Penner*, 439 F. 3d 1091, 1096 (9th Cir. 2006)(*citing Estelle*, 429 U.S. at 104. A "serious medical need" exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"; *see also McGuckin v. Smith*, 974 F. 2d 1050, 1059069 (9th Cir. 1992)(*overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F. 3d 1133, 1136 (9th Cir. 1997)). Examples of serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F. 2d at 1059-60.

   Second, if the medical need is serious, a prisoner must show that the defendant responded with deliberate indifference.  *Jett*, 439 F.3d at 1096; *Estelle*, 429 U.S. at 104.  An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; to satisfy the knowledge component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs" in two circumstances. The first circumstance occurs when "they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F. 3d 732, 744 (9th Cir. 2002). The second circumstance occurs when prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F. 3d at 1096. Deliberate indifference represents a higher standard than negligence of lack of ordinary due care for a prisoner's safety. *Farmer*, 511 U.S. at 835.

Neither negligence nor gross negligence will constitute deliberate indifference. *Boughten v. Cutter Labs*, 622 F. 2d 458, 460 (9th Cir. 1980)(mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F. 2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, proves insufficient to state a claim against prison officials for deliberate indifference." *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F. 2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. To support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the deliberate indifference. *Jett*, 439 F. 3d at 1096; *see also Hunt v. Dental Dep't*, 865 F. 2d 198, 200 (9th Cir. 1989)(delay in providing medical treatment does not constitute an

Eighth Amendment violation unless delay was harmful).

### i. Serious Medical Need

As to the objective element, chronic HCV presents a serious medical condition. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Andrews v. Cervantes,* 493 F. 3d 1047, 1055 (9th Cir. 2007). The record before the Court supports a finding of a serious medical need. The Court will consider whether the Defendants' actions amounted to deliberate indifference.

### ii. Deliberate Indifference

Defendants assert that Rose's successful treatment fails to support a finding of deliberate indifference. As set forth in this Court's previous order, and as the record shows, Defendants monitored under the Clinical Services Division Procedure 4.511A, during the timeframe applicable to this case. (*See* Doc. 78 at 3-4.)[1] Before MSP enacted its current HCV treatment procedures, this Court concluded that testing and monitoring represented a medically accepted course of treatment and did not violate the Eight Amendment. *See Anderson v. Batista*, No. CV 15-31-H-DLC-JTJ, 2016 WL 5394655, Ord. at *1 (D. Mont. Sept. 27, 2016). More recently, however, several Courts of Appeal and district courts within the Ninth Circuit have determined that monitoring an inmate's HCV condition constitutes constitutionally sufficient

---

[1] *See also* (Docs. 24-20 through 24-28)(detailing Rose's lab results from April 2018 to May of 2020).

treatment in the absence of evidence that cirrhosis or fibrosis likely is occurring. *Thacker v. Jones,* 2023 WL 136525, at *3-4, (D. Nevada Jan. 6, 2023)(collecting cases).

Prison officials referred Rose to the Medical Review Panel when his test results met the criteria for treatment under Procedure 4.511A. (Doc. 82-2.) The panel ultimately determined that Rose's circumstances and medical situation warranted treatment. (Doc. 82-3.) At the beginning of 2021, Rose was provided a course of DAA's. Rose had cleared the virus by June of 2021. (Doc. 82-4.) The Court concludes that Defendants have submitted authenticated evidence that establishes they affirmatively monitored and treated Rose's HCV. Rose showed no signs of HCV by June of 2021. Rose may have disagreed with the testing and course of treatment that he received. This disagreement fails to amount to an Eighth Amendment violation. *See Toguchi v. Chung*, 391 F. 3d 1051, 1058-60 (9th Cir. 2004); *Sanchez*, 891 F. 2d at 242. The evidence presented by Defendants shows that Rose received constitutionally adequate care.

Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to Rose's deliberate indifference claim. *See Celotex Corp*., 477 U.S. at 325. The burden now shifts to Rose to produce evidence to demonstrates that an issue of fact exists as to whether Defendants acted with deliberate indifference to his medical needs based upon a purported delay of

9

care. *See e.g., Soto*, 882 F.3d at 870.

Rose must "demonstrate that the [D]efendants' actions were both an actual and proximate cause of [his] injuries" to prove his deliberate indifference claim. *Lemire v. California*, 726 F. 3d 1062, 1074 (9th Cir. 2013); *Jett*, 439 F. 3d at 1096. Accordingly, where a delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. Rose previously told this Court that post-treatment blood testing showed that he suffered impaired liver function and permanent damage to his liver. (*See* Doc. 64 at 27.) Rose's own medical records belie this assertion. Rose has failed to show that he suffered any harm due to the alleged delay in treatment.

As detailed herein, Rose was successfully treated for HCV. Rose presents no evidence that following treatment he has suffered impaired liver function, permanent liver damage, or any associated medical complications due to a delay in treatment. The medical records supplied to the Court indicate normal liver function and do not reveal Rose has suffered lasting harm or injury from his prior HCV infection. In fact, Rose has acknowledged that he cannot meet his burden to produce evidence to create a genuine issue of material fact relative to the Defendants' summary judgment argument. (*See* Doc. 95 at 16.) To the extent that Rose was previously missing any of his medical records, he has now been provided with a copy of all records covering the relevant time-period. (*See* Doc. 103.) Rose has not supplemented his response

to the summary judgment motion with any additional medical records. Aside from his own assertions, Rose has failed to point the Court to any evidence showing that he suffered an injury caused by a delay in treatment.

Rose has failed to meet his burden on summary judgment to establish that Defendants acted with deliberate indifference to his medical needs as he failed to provide any evidence to create an issue of fact as to whether Defendants deliberately delayed or interfered with his treatment. *See Hallett*, 296 F. 3d at 744. Rose provides no support for his contention that a delay in treatment for HCV caused the harm. Insufficient evidence exists to create a genuine dispute of fact as to whether Rose suffered injury as a result of a purported treatment delay. For these reasons, Defendants are entitled to summary judgment on the remaining Eighth Amendment claim for deliberate indifference to a serious medical need.

## IV.    Conclusion

For good cause appearing, the Court will grant Defendants' motion for summary judgment.

## V.     Plaintiff's Rule 56(d) Motion

Along with his response to the Defendants' motion for summary judgment, Rose contemporaneously filed a motion pursuant to Federal Rule of Civil Procedure 56(d) asking this Court to defer consideration of the Defendants' summary judgment motion and allow time for the parties to engage in discovery. (Docs. 97-98.)

Defendants oppose the motion. (Doc. 100.)

Federal Rule of Civil Procedure 56(d) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F. 3d 995, 1000 (9th Cir. 2002). Rule 56(d) permits a court to grant certain relief to the nonmoving party when it "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [of a motion for summary judgment]." Fed. R. Civ. P. 56(d). The Court may "(1) defer considering the [summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id*.

Rule 56(d) serves to deal with "premature" summary judgment motions, where the nonmoving party has not had a fair opportunity to conduct discovery prior to filing its opposition. *See Celotex*, 477 U.S. at 326. District courts should grant Rule 56(d) motions "fairly freely" where a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case. *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F. 3d 767, 773 (9th Cir. 2003).

The Court finds that Rose has failed to satisfy the requirements of Rule 56(d). Rose has not been denied the time or opportunity to develop affirmative evidence.

Rose initially filed his § 1983 Complaint in July 2020, in which he asserted claims under the Eighth Amendment, Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and state tort claims. (Doc. 2.) Rose alleged that Defendants acted with deliberate indifference to his medical needs by failing to provide DAA's to treat his HCV. (*Id*. at 24-25.) Rose also claimed Defendants violated the ADA and RA by not providing anti-viral medication to treat his HCV. (*Id*. at 25-27.) He asserted that Defendants' conduct gave rise to state law public and private nuisance injuries. (*Id*. at 28-29.) Rose finally claimed that Defendants acted with deliberate indifference in responding to the COVID-19 pandemic and created a substantial risk of harm, in violation of the Eighth Amendment. (*Id*. at 23.)

Rose sought injunctive relief in November 2020, related to both the COVID-19 conditions at MSP and MSP's purported denial of his HCV treatment. (*See* Docs. 15 & 16.) The Court denied that request. (Doc. 25.) Rose initially appealed the Court's order, but voluntarily dismissed his appeal because he expected to begin his HCV treatment. (Doc. 27); (Doc. 35-1 at 1.) In the interim, Defendants moved to dismiss Rose's suit for failure to state a claim. (Docs. 29-30.) Rose renewed his motion for preliminary relief in January of 2021. He claimed that, though the Medical Panel had approved his HCV treatment, Mountain Pacific Quality Health Foundation had not yet done so. (Doc. 35.) The Court was subsequently notified by Defendants that Rose was receiving the requested treatment. (Doc. 37 at 2.) Rose

withdrew his second motion for injunctive relief. (Docs. 40 & 41.)

U.S. Magistrate Judge DeSoto issued findings on Defendants' motion to dismiss in August of 2021, recommending that the Court grant the motion as to most of Rose's claims. (Doc. 45.) Magistrate Judge DeSoto recommended that the Court permit Rose to amend his Eighth Amendment claim against individual defendants as it related to his HCV treatment. (*Id*.) The Court adopted those findings and recommendations over Rose's objection. (Doc 52); (Doc. 59.)

Rose filed an Amended Complaint on February 22, 2022. (Doc. 64.) The Amended Complaint substantially mirrored the original Complaint. Rose emphasized the *delay* in his treatment in his Amended Complaint. (*See id.*) Rose also added facts related to defendant-specific supervisory and non-supervisory liability. (*Id.* at 28-33.) Defendants moved to dismiss the Amended Complaint on September 26, 2022, arguing that Rose had failed to cure the deficiencies in his original pleading. (Doc. 69); (Doc. 71.) Defendants also pointed out that Rose's request for injunctive relief had become moot because Rose had since been successfully treated for HCV.

The Court took specific note of Rose's claim that post-treatment blood testing showed impaired liver function and permanent damage to his liver. The Court relied heavily on this contention in denying the Defendants' motion to dismiss and concluding that Rose had plead a plausible Eight Amendment delay in treatment

claim. (Doc. 78 at 10.) It is now apparent to the Court that no such post-treatment medical record exists to support Rose's claim of permanent liver damage.

The Court ordered Defendants to respond to Rose's Amended Complaint. Defendants timely filed a joint Answer along with a Motion for Summary Judgment. (Doc. 79); (Docs. 80 & 81.) After being provided several extensions, Rose filed his response, along with the instant Rule 56(d) motion. (Docs. 95-98).

Rose has had more than three years to develop affirmative evidence in support of his claim. Accordingly, contrary to Rose's assertion, this is not a situation where a premature or "lightning-quick" summary judgment motion has been filed. (*See e.g.*, Doc. 98 at 3.) Both parties have been well aware of the nature of the Eighth Amendment claim and the evidentiary support required to support and/or defeat the same.

Moreover, in response to Rose's statement that he was unable to access his medical records, Defendants provided Rose with records covering his medical treatment from January 2020 through May 11, 2023. (Doc. 103-1.) Rose previously possessed his medical records from 2018 to 2020. (*Id.*) Defendants supplied these records even though Rose apparently had the ability to access his own health care records by submitting a written request to health care staff. *See* DOC Policy No. 4.5.38 § IV.A.5.b (Doc. 100-1.)

Moreover, in seeking relief under Rule 56(d), Rose bears the burden of

specifically identifying relevant information, where some basis exists for believing that the information actually has been preserved and demonstrating that the evidence would prevent summary judgment. *Getz v. Boeing Co.*, 654 F. 3d 852, 867-68 (9th Cir. 2011); *Tatum v. City and County of San Francisco*, 441 F. 3d 1090, 1100-01 (9th Cir. 2006).

Rose's remaining Eighth Amendment claim is very narrow. The claim survived dismissal at the pleading stage, as explained herein, but the same cannot be said at the summary judgment stage. Rose has no post-treatment medical records to support his claim that delay in medical treatment caused harm or injury. In their opposition to Rose's 56(d) motion, Defendants assert that Rose is not seeking to identify specific alleged facts essential to respond to summary judgment, but instead is seeking "unlimited discovery into Montana State Prison's historical treatment of HCV, including medical treatment of other inmates." (Doc. 100 at 2.) Defendants argue that Rose's request amounts to a speculative fishing expedition that is disproportionate to the needs of the case and is not supported by Rule 56(d). (*Id.* at 2, 7-8.) The Court agrees.

Rose identifies wide-ranging topics in his affidavit that he seeks to pursue in discovery to support his remaining claim. These include the following items: minutes from the Medical Review Panel meetings from 2015 to 2020; his own medical records from 2014 to the present; the ability to question/depose Dr. Kohut,

Dr. Perinian, Dr. Rees, Physician Assistant Griffin, Connie Winner, Dr. Rantz, Warden Guyer, Warden Kirkegard, Warden Michael, and Todd Boese regarding the timing of the recommendation for DAA treatment and the administration of the Medical Review Panel; his entire grievance file; interrogatories and/or questioning of all individuals who signed his grievances; the ability to question all Defendants about the 1994 *Langford* Settlement Agreement; the ability to question Defendants Kirkegard, Guyer, Rantz, Michael, Kohut, Rees and Winner about other inmates who died from delay in HCV treatment, as well as the formulation of the Clinical Services Division HCV Policy and revisions; and, the ability to question Defendants regarding their knowledge of HCV treatment funding, including insurance and Medicaid Coverage, along with copies of memos from the Medicaid Agency. *See* Rose Declaration (Doc. 98-1 at 8-12); *see also* (Doc. 100 at 7-8.)

The Court must consider Rose's motion in light of his pro se status. Rose is not entitled, however, to engage in discovery based on his own wide-ranging speculation. *See Naoko Ohno v. Yuko Yasuma*, 723 F. 3d 984, 1013 n. 29 (9th Cir. 2013) (evidence to be sought through discovery must be based on more than mere speculation). Further, this general information would not suffice to defeat the narrow issue raised in the summary judgment motion, opposition to which Rose's own medical records do not support. Put another way, under Rule 56(d)(2)-(3) Rose has not demonstrated adequately the facts that he seeks to elicit exist or that these

sought-after facts would prove essential to oppose the motion for summary judgment. Accordingly, the Court concludes that Rose has not shown the existence of actual relevant information that would prevent summary judgment and he is not entitled to a deferment of consideration of Defendants' summary judgment motion under Rule 56(d).

Based on the foregoing, **IT IS HEREBY ORDERED**:

1. Defendants' joint motion for summary judgment (Doc. 80) is **GRANTED**.

2. Rose's Rule 56(d) motion (Doc. 97) is **DENIED**.

3. The Clerk of Court is directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

4. The Clerk of Court is additionally directed to have the docket reflect that the Court certifies, pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure, that any appeal of this decision would not be taken in good faith.

DATED this 1st day of November, 2023.

_____

Brian Morris, Chief District Judge
United States District Court